UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JEFFREY GILBERT,

                                        Plaintiff,

            vs.                                                   9:03-CV-423
                                                                   (J. Sharpe)
GLENN GOORD, et al.,

                                        Defendants.

_____

APPEARANCES                                OF COUNSEL

JEFFREY GILBERT
Plaintiff pro se

ELIOT SPITZER                              JAMES SEAMAN
Attorney General of the                    Asst. Attorney General
State of New York
Attorney for defendants

## ORDER and REPORT-RECOMMENDATION

      This matter has been referred to me for Report and Recommendation by the

Honorable Gary L. Sharpe, United States District Judge, pursuant to 28 U.S.C. §

636(b) and Local Rules N.D.N.Y. 72.3(c).

      In this amended civil rights complaint (Dkt. No. 8), plaintiff alleges that

defendants violated federal constitutional and state anti-discrimination laws when they

removed him from his Temporary Work Release Program.  Plaintiff seeks injunctive[1]

---

[1] Although the amended complaint requests "injunctive relief" in the form of an order
preventing defendants from retaliating against plaintiff for bringing this action, plaintiff has now been
released from custody, and any request for injunctive relief would be moot. *Mawhinney v. Henderson*,

and substantial monetary relief.

Presently before the court is a motion for summary judgment pursuant to FED. R. CIV. P. 56, filed by defendant Thomas Testo, the only defendant that has been served in this action to date. (Dkt. No. 20).  Plaintiff has not responded to the motion. For the following reasons, this court agrees with the moving defendant and will recommend dismissal of the complaint as to defendant Testo.  The court will also discuss the case with respect to the remaining defendants.

## DISCUSSION

### 1.   <u>Summary Judgment</u>

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*.  However, when the moving  party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  At that point, the nonmoving party must

---

542 F.2d 1, 2 (2d Cir. 1976).

move forward with specific facts showing that there is a genuine issue for trial. *Id. See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted).

## 2.    <u>Facts</u>

Plaintiff has named seven defendants in this action.  In addition to Glenn Goord, the Commissioner of the Department of Correctional Services, plaintiff has named Stephen M. Bernardi, Deputy Commissioner of Policy and Compliance; Cheryl Morris, Work Release Counselor at Hudson Correctional Facility; Philip Abatable, Senior Work Release Counselor and Acting Superintendent of Hudson Correctional Facility; Val Kriele, Acting Deputy Superintendent of Program Services at Hudson; Thomas Testo, Inmate Grievance Coordinator; and Michael T. McHale, Reviewer for the Temporary Release Program.

Plaintiff alleges that in May of 2002, he was a participant in the Work Release Program (WRP) at Hudson Correctional Facility. Amended Complaint (AC) at ¶¶ 2-5. Plaintiff states that the WRP is governed by the Department of Correctional Services (DOCS) Temporary Release Program (TRP) Rules. AC ¶ 2.  Plaintiff claims that on May 26, 2002, he went to see defendant Cheryl Morris to discuss an important issue, but defendant Morris responded in a hostile and unprofessional manner. AC ¶ 5. Plaintiff states that one week later, he was notified that he had been found guilty of a

TRP rule violation in relation to the May 26, 2002 incident involving defendant Morris. *Id.*

Plaintiff states that he spoke to defendant Morris's immediate supervisor, defendant Philip Abatable, who allegedly told plaintiff not to "push this any further" because they could "make things very difficult" for plaintiff. AC ¶ 6.  Plaintiff states that he was afforded a Temporary Release Committee hearing on July 11, 2002, at which defendant Morris brought "new charges" against plaintiff. AC ¶ 7.  Plaintiff alleges that defendant Morris was involved both in bringing the charges and participating in the determination to find him guilty of those charges. AC ¶¶ 7-8.

Plaintiff alleges that he is white and defendant Morris is black. AC ¶ 9. Plaintiff claims that on July 18, 2002 and September 16, 2002, defendant Morris called plaintiff into her office and made racially discriminatory statements to him. AC ¶¶ 9-10.  Plaintiff alleges that although he complained to defendant Abatable, he told plaintiff not to "push it" and that Abatable would have to "back [Morris] no matter what." AC ¶ 12.  Plaintiff states that at each Temporary Release Committee hearing where rule violations were charged against plaintiff by defendant Morris, defendant Abatable sat as the chairman. AC ¶ 13.

Plaintiff alleges that on September 16, 2002, he was removed from the WRP and incarcerated at Hudson Correctional Facility. AC ¶ 14.  Although plaintiff states

that he was afforded a hearing on November 14, 2002, plaintiff states that the Temporary Release Committee ignored the conflict of interest that plaintiff claimed against defendants Morris and Abatable, and found that the removal of plaintiff from the program was proper and afforded plaintiff due process. AC ¶ 15.

Plaintiff states that on December 27, 2002, he filed a grievance against defendants Morris and Abatable, alleging "Reverse Racism/Discrimination" by defendant Morris, conspiring with defendant Abatable.  Plaintiff states that he filed the grievance with defendant Thomas Testo. AC ¶ 17.  Plaintiff claims that defendant Testo knew that a grievance alleging unlawful discrimination was to be sent to the Superintendent, with a copy to the Office of Diversity Management within twenty four hours. AC ¶ 17.  Plaintiff claims that defendant Testo filed the grievance, knowing that it would be reviewed by Acting Superintendent Abatable and that a conflict of interest was sure to result since Abatable was one of the individuals about whom plaintiff was complaining. AC ¶ 18.

Plaintiff then alleges that the grievance was improperly investigated because although defendant Abatable ordered defendant Kriele to investigate the matter, the grievance was never sent to the Office of Diversity Management pursuant to DOCS Directives. AC ¶ 21.  Plaintiff alleges that defendants Testo, Kriele, and Abatable conspired to change the title of plaintiff's grievance from one alleging racism and

5

discrimination to one alleging merely "harassment," so that the grievance would not have to be sent to the Office of Diversity Management. *Id.* Plaintiff alleges that the grievance was denied, and that although the denial was signed by Deputy Superintendent of Security Daniel Martuscello, this signature was "a fraud" because plaintiff claims that Martuscello was "out on vacation", and defendant Abatable was the Acting Superintendent who would have signed the denial of this grievance. AC ¶ 22.

Plaintiff states that he appealed the denial of his grievance to the Central Office Review Committee (CORC), but that the appeal materials were sent back to him, with a notification that only the facility grievance coordinator could forward appeals to the CORC. AC ¶ 23. Plaintiff seems to imply that this allegedly improper action was influenced by the defendant "conspirators." *Id.* Plaintiff states that as a result of this action, he filed a grievance against defendant Testo, claiming that Testo had not provided plaintiff with a copy of the appeal that was being sent to the CORC. AC ¶ 24. Plaintiff states that as a result of that grievance, defendant Testo provided plaintiff with the appropriate papers. *Id.* Plaintiff states that as a result of reviewing the papers given to plaintiff by Testo, plaintiff was able to confirm that the title of his grievance had been changed from racism to harassment. AC ¶ 25.

Plaintiff alleges that he wrote to defendant Goord, and that defendant Goord

turned the matter over to defendant Bernardi, who ultimately "covered up" the improper actions of the other defendants. AC ¶ 27.  Plaintiff alleges that he also appealed his removal from the WRP. AC ¶ 28.  Plaintiff states that the WRP appeal is a two-tiered process, and in plaintiff's "first" appeal, he outlined the conspiracy between Morris and Abatable that was allegedly covered up by defendants Kriele and Testo. AC ¶ 29.  Plaintiff claims, however, that the reviewer of this appeal was defendant Michael McHale, who should have recused himself because of his "close association" with Abatable and Morris. *Id.*  Plaintiff alleges that instead of recusing himself, defendant McHale communicated with Abatable and Morris, ultimately denied plaintiff's first appeal, and "blocked" the appeal intended for McHale's supervisor, Debra Joy, the Director of TRPs. *Id.*  Plaintiff states that he was notified that no further appeals were available. *Id.*

Plaintiff also claims that prior to the incidents in his case, "other white inmates" had complained about the actions of defendants Morris and Abatable, and of Abatable's "laxity" in his supervision of Morris. AC ¶ 30.  Plaintiff claims that Goord and Bernardi failed in their duties to take corrective action after "being alerted" to the matter by plaintiff. AC ¶ 31.

The amended complaint lists four causes of action.

1.     Substantive and Procedural Due Process violations when (a) defendants

Morris and Abatable took part in the decision to remove plaintiff from the WRP; (b) when defendants Testo, Kriele, and Abatable changed the title of plaintiff's grievance from racism to harassment; (c) when defendants Goord and Bernardi failed to correct the violations claimed by plaintiff; and (d) when defendant McHale "entered into the conspiracy" denying plaintiff's first TRP appeal and blocked the second appeal.

2.      "State law of Racism and Discrimination Violations" and DOCS Rules and Regulations when (a) defendant Morris conveyed her racist, threatening, and hostile behavior to plaintiff; (b) defendant Abatable failed to properly supervise Morris and stop her racist behavior; and (c) all the other defendants failed to correct these violations.

3.      Eighth Amendment violations of plaintiff's right to be free from cruel and unusual punishment when (a) Morris caused plaintiff pain and suffering by her racist and discriminatory treatment; (b) and all the other defendants failed to take corrective action.

4.      Eighth Amendment violations when (a) defendants Abatable Kriele, Testo, McHale, Goord, and Bernardi knew about, but ignored plaintiff's suffering; and (b) defendants Abatable, Kriele, and Testo conspired to deprive plaintiff of his rights to "life, liberty and the pursuit of happiness."

**3.      Service of Process**

The Federal Rules require that a defendant be served within 120 days of filing the complaint. FED. R. CIV. P. 4(m).  The failure to serve a defendant within 120 days of filing the complaint may be a ground for dismissal of the complaint, unless good cause is shown for an extension of that time. *Id.*  It is true that a pro se, in forma pauperis plaintiff may rely upon the Marshal to properly serve the summons and complaint. *Romandette v. Weetabix*, 807 F.2d 309, 311 (2d Cir. 1986).

There is support for the proposition that, so long as a pro se plaintiff has properly identified the defendant, the Marshal's failure to effect service automatically constitutes good cause. *See Ruddock v. Reno*, 104 Fed. Appx. 204, 206-207 (2d Cir. 2004)(citations omitted).  Although *Ruddock* was an "unpublished decision," the other Circuit cases cited by the Second Circuit in *Ruddock* show support for this assertion. *Ruddock*, however, was a case against ***federal*** defendants, and the court reasoned that it would not be overly burdensome for the Marshal to obtain a current business address from the Department of Justice, since both work for the same employer. *Id.* at 207 (quoting *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990).  The court in *Sellers* commented that if the Marshal could not obtain the current business address from the Department of Justice, a pro se inmate could not reasonably be expected to obtain an address from the Bureau of Prisons *Id*.

This case presents a different problem.  The defendants in this action are New York State Corrections officials, not federal officials, and often additional cooperation from State officials is necessary to determine current business addresses for defendants.  Additionally, defendants may retire or stop working for DOCS before plaintiff files his federal lawsuit.  This makes finding current addresses even more difficult.  Security issues also arise regarding home addresses of those defendants who retire from DOCS.

The docket sheet in this case indicates that on August 11, 2003, summonses were issued by the Clerk's Office of the Northern District of New York for service on all seven defendants.  On August 27, 2003, plaintiff filed a change of address with the court because he was being released on parole, and would not be incarcerated after August 28, 2003. (Dkt. No. 12).  Defendant Testo filed an acknowledgment of service on September 18, 2003, but on November 10, 2003, the Marshal's Service filed forms indicating that the six other defendants had not been served. (Dkt. No. 16).

The documents filed by the Marshal's Service include a letter written to plaintiff, stating that the six defendants had not been served, and if plaintiff wanted the Marshal to try again, plaintiff would have to submit new USM-285 forms and a new request for service pursuant to FED. R. CIV. P. 4.  The letter further stated that the failure to serve a defendant could result in the dismissal of the complaint.  However, this notice contained no indication of *why* the individuals had not been served, whether it was because the address was incorrect, whether the defendant had retired or no longer worked for DOCS or some other reason for lack of effective service.

Although plaintiff did not respond to this letter by writing to the court, it is questionable whether plaintiff even got a copy of this notice from the Marshal.  The Marshal's notice was dated October 30, 2003, and plaintiff had been released from incarceration on August 28, 2003.  Plaintiff filed a change of address with the court, as

he is required to do, but the Marshal's notice does not contain the address to which the notice was sent, and it is impossible to determine whether the Marshal sent the notice to plaintiff at his new address.  So, it is very possible that plaintiff never knew that the complaints had not been served.

This court finds that the above constitutes good cause for failure to serve the remaining defendants, and will not recommend dismissal at this time based on plaintiff's failure to serve.  However, this recommendation should serve as notice to plaintiff that his complaint was not served on six of the defendants, and plaintiff may write to the court if he wishes assistance in locating and serving these defendants.  The court understands that plaintiff is no longer incarcerated, and prior to taking any further steps, the court must determine whether plaintiff wishes to proceed.  If he fails to seek assistance from the court and fails to effect service on the remaining defendants, his complaint will then be subject to dismissal.

The court also notes that plaintiff has been proceeding *in forma pauperis.* However, plaintiff has been released from prison, and it is unclear whether plaintiff is still eligible for *in forma pauperis* status.  If plaintiff wishes to continue to receive *in forma pauperis* treatment, which includes assistance by the Marshal with service of process, plaintiff should submit a new application for *in forma pauperis* status with his request for service.

11

4.    **Defendant Testo**

Defendant Testo was the Inmate Grievance Coordinator at Hudson Correctional Facility at the time of the events alleged in the amended complaint.  Plaintiff alleges that he filed a grievance with defendant Testo alleging discriminatory treatment by defendants Morris and Abatable.  Plaintiff seems to allege that defendant Testo conspired with defendants Abatable and Kriele to change the title of his grievance so that it would not have to be sent to the Office of Diversity Management, and instead would only be sent to the Superintendent, who at the time happened to be defendant Abatable.  Plaintiff also seems to claim that defendant Testo later interfered with plaintiff's attempt to appeal the denial of the grievance, until plaintiff filed a grievance against Testo himself. AC ¶ 23.  Plaintiff implies that defendant Testo did not give plaintiff a copy of the appeal that was being forwarded to the CORC in an effort to hide the fact that the title of the grievance had been changed to harassment.

    **A. Procedural Due Process**

In order to succeed on a section 1983 claim, plaintiff must show that he has been deprived of a constitutional or other federal right. 42 U.S.C. § 1983.  Generally, violations of state laws or procedures do not rise to the level of constitutional violations. *See Watson v. City of New York*, 92 F.3d 31, 37 (2d Cir. 1996); *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir. 1987).  In New York, the grievance resolution

procedure was established by state law. *See* N.Y. CORRECT. LAW § 139.  *See also*

*Patterson v. Smith*, 53 N.Y.2d 98, 101, 440 N.Y.S.2d 600, 602, 423 N.E.2d 23 (1981).

New York has also promulgated regulations governing the procedures for resolving

inmate grievances.  N.Y. COMP. CODES R. & REGS. tit. 7, §§ 701.1-701.16.

 Courts have consistently held that because grievances procedures are

undertaken voluntarily by the New York and other states, they are ***not constitutionally***

***required***. *See Ramos v. Hanslmaier*, 96 Civ. 744, 1997 U.S. Dist. LEXIS 6082, \*6-7

(S.D.N.Y. Feb. 19, 1997)(multiple citations omitted). *See also Bullock v. Horn,* CV-

99-1402, 2000 U.S. Dist. LEXIS 21573, \*22-23 (M.D. Pa. 2000)(plaintiff claimed

improper refusal to process grievance); *Hoover v. Watson*, 886 F. Supp. 410, 418-19

(D. Del.), *aff'd*, 74 F.3d 1226 (3d Cir. 1995); *Muhammad v. McMickens*, 86 Civ. 7376,

1988 U.S. Dist. LEXIS 552, \*8-9 (S.D.N.Y. Jan. 25, 1988).  Because the grievance

procedures are not constitutionally required, a state's violation of those procedures or

its failure to enforce them does not give rise to a claim under section 1983. *Id.*

 Thus, while the filing of grievances is protected, the manner in which a

grievance is investigated is ***not constitutionally protected***. *Odom v. Poirier*, 99 Civ.

4933, 2004 U.S. Dist. LEXIS 25059, \*37-38 (S.D.N.Y. Dec. 10, 2004)(citing *inter*

*alia Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003)).  The extent of

investigation into the grievance is in the discretion of the officers who conduct it.

*Torres*, 246 F. Supp. 2d at 342.  Thus, in this case, even assuming that defendant Testo did change the title of plaintiff's grievance,[2] and in doing so violated a State rule or regulation, this would not rise to the level of a constitutional procedural due process violation.  Any procedural due process claim should be dismissed as against defendant Testo.

In any event, the court notes that defendant Testo has submitted an affidavit, attaching the grievance documents in question. Testo Aff. Ex. A-E.  After stating his name, inmate number, date, and place of incarceration, plaintiff's grievance begins with a section entitled "Statement." Def. Ex. A at p.2.  The first sentence of the "Statement" indicates that "Corrections Counselor Cheryl Morris and Senior Work Release Counselor Philip Abatable did conspire to-gether [sic] to remove me from Work Release status."  *Id.*  There is ***no mention*** of racial discrimination in this sentence, in the first paragraph of the grievance, and in fact, the first mention of ***any*** alleged statement relating to race was not made until close to the bottom of the second page, where plaintiff claims that defendant Morris told plaintiff that the "white inmates" believed they should get special treatment.

Plaintiff alleges another racial remark by defendant Morris, and then discusses

---

[2] This court makes no such finding, however, because a review of the documents submitted with defendant Testo's affidavit in this case shows that defendant Testo's interpretation of the substance of plaintiff's grievance was completely reasonable.

an alleged conflict of interest in the Temporary Release Committee's decision to charge him with violations and remove him from his Work Release Program. Finally, plaintiff states that there were "clear racial overtones to Ms. Morris's intent." *Id.* In his affidavit, defendant Testo states that based on the first paragraph of plaintiff's grievance, the grievance clearly fit into the definition of harassment grievances, which are defined as claims that the inmate has been subjected to misconduct by an employee that was meant to annoy, intimidate, or harass the inmate. Testo Aff. ¶ 8.

The Department of Correctional Services has a three-tiered grievance program. N.Y. COMP. CODES R. & REGS. § 701.7. First, an inmate files a grievance with the Inmate Grievance Resolution Committee (IGRC). *Id.* § 701.7(a). If the inmate is dissatisfied with the result of the IGRC review, he must appeal to the superintendent of the facility. *Id.* § 701.7(b). Finally, if the inmate is dissatisfied with the superintendent's response, he must appeal to the Central Office Review Committee (CORC). *Id.* § 701.7(c).

In addition to the formal grievance procedure addressed above, the regulations provide a procedure for "harassment," arising out of allegations of employee misconduct meant to harm, annoy, or intimidate an inmate. *Id.* § 701.11(a). Pursuant to this procedure, the inmate may either file a formal grievance immediately or first report the incident to the employee's immediate supervisor. *Id.* § 701.11(b). All

grievances claiming harassment are given a grievance number and sent directly to the Superintendent, bypassing the IGRC. *Id.* § 701.11(b)(2). The Superintendent or his designee then determines whether the allegations, if true, would represent harassment. *Id.* § 701.11 (b)(3).

If the Superintendent determines that the allegations do not represent a bona fide case of harassment, then the allegations are submitted to the IGRC for resolution according to the formal grievance procedures outlined in section 701.7. *Id.* § 701.11(b)(3). If the Superintendent finds that the allegations do represent a bona fide case of harassment, then he must either initiate an in-facility investigation by higher ranking personnel, or request an investigation by the Inspector General's Office, and if criminal activity is involved, the superintendent may request an investigation by the New York State Police Bureau of Criminal Investigation *Id.* § 701.11(b)(4)(I)-(ii). *See also Perez v. Blot*, 195 F. Supp. 2d 539, 542-43 (S.D.N.Y. 2002)(describing the grievance system).

As alleged by plaintiff, there is also a separate grievance procedure for allegations of unlawful discrimination. *Id.* § 701.12. The procedure for a claim of unlawful discrimination is the same as that for harassment grievances to the extent that the initial claims bypass the IGRC and are sent directly to the Superintendent. *Id.* § 701.12(a)-(c). However, in the case of grievances claiming discrimination, the

16

regulations state that in addition to being sent to the Superintendent, a copy of the grievance must also be sent to the "assistant commissioner, office of affirmative action." *Id.* § 701.12(c).

Based on the content of plaintiff's grievance, it was reasonable for defendant Testo to interpret the grievance as one claiming harassment. Although plaintiff claims that the grievance was sent to defendant Abatable for review, the documents clearly show that this is ***not*** true. The grievance was sent to Herbert McLaughlin, the Superintendent. Testo Aff. Ex. B. Superintendent McLaughlin, in turn, sent the grievance to defendant Val Kriele, Acting Deputy Superintendent for Programs. *Id.* The grievance was sent to defendant Kriele for investigation. Defendant Kriele then investigated the grievance by obtaining a statement from defendant Abatable. It is clear that defendant Abatable had no involvement in the decision to deny the grievance. Testo Aff. Ex. D. The decision is signed by Daniel Martuscello, Acting Superintendent. *Id.*

Defendant Abatable was asked to write a memorandum of his actions. Clearly, defendant Kriele would have been required to get a statement from the individual or individuals who were being accused of the conduct by plaintiff. The first sentence of the memorandum states that this is Abatable's "response to the above-mentioned grievance." Testo Aff. Ex. C. In his memorandum, defendant Abatable explained the

17

reasons for plaintiff's removal from the Work Release Program.  Thus, it is clear that defendant Testo did *not* send the plaintiff's grievance to Abatable as plaintiff claims. Abatable was involved only to the extent that he was asked to respond to plaintiff's complaints.

Although plaintiff states that Testo "conspired" with other defendants, there is absolutely no evidence to support this statement based on the record.  Conclusory allegations of conspiracy cannot be the basis for a section 1983 claim. *See Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993))(conclusory allegations of conspiracy do not state a claim under section 1983).  Defendant Testo is in charge of processing grievances, and is not involved in any way in making any decisions whether to grant or deny the grievance. Testo Aff. ¶ 6.  His work includes receiving the grievance, assigning it a code number, briefly summarizing the grievance, and entering the information into a computer. Testo Aff.  ¶ 3.  There is *no* indication that defendant Testo spoke to Morris or any other defendant in this case regarding this grievance.  It was *not* Testo's responsibility to assign someone to investigate the case.  Thus, any conspiracy claims may also be dismissed as against this defendant.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendant Testo's motion for summary judgment (Dkt. No. 20) be **GRANTED**, and the complaint be **DISMISSED AS AGAINST**

18

**DEFENDANT TESTO**, and it is

ORDERED, that if plaintiff wishes to pursue this action as against any of the other defendants, he must either properly serve the defendants or if he is unable to do so, he must write to the court to request assistance with service, and it is further

ORDERED, that if plaintiff wishes that the Marshal assist him with service, plaintiff must submit to the court a newly completed form requesting continued *in forma pauperis* status.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 30, 2005

Hon. Gustave J. DiBianco
U.S. Magistrate Judge